No. 13-2896

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

| | |
|---|---|
| CARL M. BIRKELBACH, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) |
| | ) |
| UNITED STATES SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| | ) |

---

**Appeal From the Opinion of the
Securities and Exchange Commission
Admin. Proceeding File No. 3-14609**

---

### BRIEF AND REQUIRED SHORT APPENDIX OF
### PETITIONER

JAMES J. MOYLAN AND ASSOCIATES, P.C.
James J. Moylan
Kendra Thramann Marderosian
Attorneys for Petitioner

Post Office Box 775965
31685 Inca Way
Steamboat Springs, CO.  80477-5965
(970) 870-0730 / (970) 870-0736 FAX

James A. McGurk
Law Offices of James A. McGurk, P.C.
10 S. LaSalle, Ste. 3300
Chicago, IL.  60603-1026
(312) 236-8900

## DISCLOSURE STATEMENTS

James J. Moylan and Kendra Thramann Marderosian have appeared for Petitioner before FINRA, the NAC and the SEC. James J. Moylan, James A. McGurk and Kendra Thramann Marderosian are expected to appear in this Court.

Respectfully submitted,

/s/ James J. Moylan
James J. Moylan,
Attorney for Plaintiff-Appellants

**OF COUNSEL:**
JAMES J. MOYLAN AND ASSOCIATES, P.C.
James J. Moylan / Kendra Thramann Marderosian
Post Office Box 775965
31685 Inca Way
Steamboat Springs, CO.  80477-5965
(970) 870-0730 / (970) 870-0736 FAX

James A. McGurk
Law Offices of James A. McGurk, P.C.
10 S. LaSalle, Ste. 3300
Chicago, IL  60603-1026
(312) 236-8900

# TABLE OF CONTENTS

DISCLOSURE STATEMENTS..................................................................................i

I.   JURISDICTIONAL STATEMENT ..........................................................1

II.  STATEMENT OF THE ISSUES...............................................................1

III. STATEMENT OF THE CASE ..................................................................2

IV.  STATEMENT OF FACTS ........................................................................2

V.   SUMMARY OF ARGUMENT...................................................................9

VI.  ARGUMENT ...........................................................................................10

VII. CONCLUSION ........................................................................................26

PROOF OF SERVICE ........................................................................................27

REQUIRED SHORT APPENDIX OF PETITIONER ..............................................28

# TABLE OF AUTHORITIES

28 U.S.C. §2107……………………………………………………………… 1

15 U.S.C. §78y……………………………………………………………… 1

15 U.S.C. §78o-3…………………………………………………………… 1

15 U.S.C. §78s……………………………………………………………… 1

17 C.F.R. § 240.19d………………………………………………………… 1

17 C.F.R. §201.420(a)] ………………………………………………......1

28 USC §2462…………………………………… 1,2,9,10,12,13-18, 26

17 C.F.R. 24017, 240.17a…………………………………………… 8

15 USC §80b-6……………………………………………………………11

15 U.S.C. §§77a; 78a……………………………………………………… 11

15 USC 78l(k)………………………………………………………….... 12

15 U.S.C. §78f……………………………………………………………… 15

15 U.S.C. §78o…………………………………………………………… 15

FINRA Rule 4530………………………………………………………… 17

FINRA Code of Arbitration Procedure,
    Rules 12206, 13206…………………………………………..…… 17

FINRA Sanction Guidelines………………………………….…............ 20

*Monetta Financial Services, Inc. v. SEC,*
    962 F.2d 749, 751 (7th Cir. 1992)………………………………… 10

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185, 96 S. Ct. 1375 (1976)………………………………11

*Aaron v. SEC,*
    446 U.S. 680, 100 S. Ct. 1945 (1980)…………………………… 11

*Transamerica Mortgage Advisors, Inc. v. Lewis,*
    444 U.S. 11 (1979)…………………………………………… 11

*International Brotherhood of Teamsters v. Daniel,*
    439 U.S. 551 (1979)…………………………………………… 11

*SEC v. Sloan,*
    436 U.S. 103 (1978)…………………………………………… 11

*Matz v. Household International Tax Reduction Investment Plan,*
    265 F.3d 572 (7th Cir. 2001)………………………………… 12

*Johnson v. SEC,*
    87 F.3d 484 (U.S. App. D.C. 1996)……………………….…... 12-15

*Gabelli v. SEC*, 568 U.S. ___, (2013)…………………………….…... 12,13,19,20

*SEC v. Jones,*
    476 F. Supp. 2d 374, 385 (S.D.N.Y., 2007)……………………… 15,20,24

*Austin Municipal Securities, Inc. v. NASD,*
    757 F.2d 676, 692 (5th Cir. 1985)…………………………….…. 16

*D'Alessio v. NYSE,*
    258 F.3d 93, 98 (2d Cir. 2001)……………………………….… 16,18,19

*Stephen J. Gluckman,*
    54 SEC 175, 189 (1999)……………………………………….. 16

*Sparta Surgical Corp. v. NASD,*
    159 F.3d 1209, 1214 (9th Cir. 1998)……………………….….... 16

*Larry Ira Klein*, 52 SEC 1030 (1996)………………….……………..... 17

*Gordon v. New York Stock Exchange, Inc.,*
    422 U.S. 659, 689, 95 S. Ct. 2598 (1975)…………………..…..... 17

*Rothensies v. Electric Storage Battery Co.,*
    329 U.S. 296, 301, 67 S.Ct. 271 (1946)………………….…..….... 17

*Department of Enforcement v. Merrimac Corporate Securities, Inc.,*
Disc. Proc. No. 2007007151101, at \*33 (FINRA December 8, 2010)… 20

*Department of Enforcement v. Pellegrino,*
Disc. Proc. No. C3B20050012, at *2 (FINRA NAC January 4, 2008)...    20,21,23

*Department of Enforcement v. Midas Securities, LLC, et al.,*
Disc. Proc. No. 2005000075703 (FINRA NAC March 3, 2011).........    21

*Paul C. Kettler*, 51 SEC 30 (1992).................................    23

*DOE v. VMR Capital Markets,*
NASD Complaint No. C02020055 (NAC December 2, 2004)..............    23

*Robert J. Prager,*
Exchange Act Release No. 51974 (SEC July 6, 2005)....................    23

*Albert v. O'Neal*, 51 SEC 1128 (1994)........................................    23

*Michael H. Hume*, 52 SEC 243 (1995)........................................    23

*Quest Capital Strategies, Inc.*, 55 SEC 362 (2001)........................    23

*Richard F. Kresge,*
2008 FINRA Disip. LEXIS 46...........................................    23

*Bradford John Titus*, 52 SEC 1154 (1996).................................    23

*Hotmar v. Lowell H. Listrom & Co.,*
808 F.2d 1384, 1387 (10th Cir. 1987)...............................    24

# I.  JURISDICTIONAL STATEMENT

The Seventh Circuit Court of Appeals has jurisdiction to hear this Petition under 28 USC §2107(b)(2) and Section 25 of the Securities Exchange Act of 1934, ("'34 Act" or "Exchange Act"), [15 USC 78y], as this is a Petition for Review of an Opinion by the United States Securities and Exchange Commission ("SEC") issued on July 2, 2013, sustaining the disciplinary action taken and costs imposed by the Financial Industry Regulatory Authority, Inc.'s ("FINRA"), National Adjudicatory Council ("NAC") against Carl M. Birkelbach. FINRA is a securities industry self-regulatory organization, "SRO," formed pursuant to Section 15A of the Exchange Act [15 USC 78o-3] and is the current successor to the National Association of Securities Dealers, Inc., ("NASD"). The Petition for Review was filed on August 27, 2013.

Jurisdiction before the SEC was predicated on Sections 19(d) and (e), of the Exchange Act [15 U.S.C. §78s(d) and (e)] and Rules 19d-1 and 19d-3 promulgated under the Exchange Act, [17 C.F.R. § 240.19d-1 and 19d-3] and Rule 420(a) of the SEC Rules of Practice, [17 C.F.R. §201.420(a)], which grants authority to the SEC to review the decisions of SRO's, including FINRA.

## II.    STATEMENT OF THE ISSUES

A.    Whether a SRO established by, and subject to, the same laws as the SEC, possessing equal disciplinary powers, should be equally subject to the limitations period contained in 28 USC §2462, which requires the SEC to bring actions for civil penalties within 5-years of the date of the alleged misconduct.

B.    Whether the NAC's increase of the sanction to a lifelong bar from the securities industry was excessive as insufficiently related to the alleged misconduct.

## III.    STATEMENT OF THE CASE

Birkelbach was barred from serving in the securities industry in any capacity by FINRA's NAC, after appealing the findings of a FINRA Hearing Panel on the administrative disciplinary complaint filed by FINRA's Department of Enforcement ("DOE"). The Hearing Panel suspended Birkelbach for 6-months and fined him $25,000 based on its finding that Birkelbach failed to supervise a former registered representative of Birkelbach Investment Securities, Inc. ("BIS"), William J. Murphy ("Murphy"), in his management of the Amy Lowry ("AL") and Benjamin Martinelli ("BM") customer accounts.

## IV.    STATEMENT OF FACTS

On appeal, Petitioner Birkelbach raises two issues: 1) the application of the 5 year limitations period in 28 U.S.C. §2462 to DOE's Complaint; and 2) Birkelbach's alleged failure to supervise Murphy, resulting in FINRA's NAC permanently barring Birkelbach from serving in all capacities in the securities business. Because Birkelbach is the only remaining party to this appeal, the Statement of Facts will contain only those facts necessary to the two issues Birkelbach raises in this appeal.

The gravamen of the original Complaint filed by the DOE against Murphy, Birkelbach and BIS involved the activities of Murphy vis-à-vis the account of

Customer AL and to a lesser degree and shorter duration, Murphy's activities with respect to the account of Customer BM.

The Complaint alleged that from the time AL's account was assigned to Murphy in July, 2002, until it was closed in February, 2006, Murphy engaged in various types of listed options trading and covered call writing in violation of the Federal Securities Laws and the rules and regulations of the NASD, n/k/a FINRA. (SEC Record on Appeal, 4 ("ROA,") Bates-Stamped No. 0043 ("B"), p. 6, et. seq.) The violative conduct alleged in BM's account occurred over the 3-month period from April, 2007 to June, 2007. (Id.)

The Seventh Claim for Relief in DOE's Complaint is directed at Birkelbach and alleges a failure to supervise Murphy.[1] (ROA 4 B0043, p. 13.) Birkelbach was registered as a General Securities Representative ("RR"), Municipal Securities Representative, Registered Options Principal, Financial and Operations Principal, General Securities Principal and Municipal Securities Principal. (ROA 5, B0119, p.4-6, Complaint and Answer ¶8.)

From on or about October, 2001 to February, 2006, Birkelbach was BIS's Senior Registered Options Principal ("CROP"). (ROA 5, B0119, p.5, Complaint and Answer ¶12.)

Birkelbach initially approved Customer AL's account for options trading – covered call writing and buying stock options. (ROA 114, B02427, JX16; ROA 556,

---

[1] The Hearing Panel denied DOE's Sixth Claim for Relief – Failure to Establish and Maintain an Adequate Supervisory System and Written Supervisory Procedures to Supervise Murphy by BIS acting through Birkelbach. Violation of NASD Conduct Rules 2860(b), 3010 and 2110. See, ROA 789, B012905, H.P. Decision, at 33-36.

B09445.)  Birkelbach also approved AL's account for additional option strategies in November, 2004.  (ROA115, B02429, JX17; ROA 557, B09447)

To fulfill his supervisory responsibilities, Birkelbach reviewed trade blotters and order tickets daily.  (ROA 422, B07407, TR 1116-1117; ROA 789, B01295, H.P. Decision, at 37.)  Birkelbach's general method of supervision also involved: walking around the office, dropping into broker's offices to ask questions, to listen to conversations with customers, in addition to periodic meetings with brokers and clients.  (ROA 422, B07407, TR 1104)  BIS, at all times material hereto, also employed a full time Compliance Officer, George Langlois. (ROA 421, B06971, TR746; ROA 422, B07407, TR 1100.)  Finally, Birkelbach has been qualified to serve in a supervisory capacity since at least 1983.  (ROA 818, B013535, NAC, at, 3.)

**Customer AL**

Birkelbach supervised AL's account employing the above procedures.  In addition, Birkelbach increased supervision over AL's account by employing a variety of heightened supervisory techniques when AL's account: "hit his radar screen," as AL's percentage of business for Murphy and the Firm increased.  (ROA 422, B07407, TR. 1104.) Birkelbach also tailored his supervision of AL's account to AL's stated investment goals and objectives:  "Generate $10,000 month in income and do not let any P&G stock get called away."[2]   Simply stated, a customer's goal to

---

[2]   The NAC determined that Murphy's testimony that AL wanted to generate $10,000.00 a month from her account "not credible".  (ROA 818, B13535, NAC, at 34-35 fn. 66.) (Cf, ROA 422, B07407, TR 1000) The NAC then went on to state:  "...the Hearing Panel implied that it did not find Birkelbach credible.  (Id. Emphasis added.)(Cf. ROA 422, B07407, TR1100.)  A great deal turns on the $10,000 per month issue.  The Hearing Panel made no finding: "...that AL sought $10,000 monthly".  (Id.) (See, above.)  The NAC ignored it as well.  But this fact, established by impeachment of AL is critical

4

generate $10,000 per month suggests the customer is willing to be aggressive. That AL said she needed to generate $10,000 per month cannot be gainsaid. This critical fact was ignored in the H.P. Decision (ROA 789, B012905) and in the NAC Decision. (ROA 818, B013535, NAC, at 34-35, fn. 66.)

The record is crystal clear on this critical point:

> Q.    (By Mr. Glanzman – Direct) When you met with Mr. Murphy, did you tell him that you needed your securities account to generate at least $10,000 a month to live on?
> A.  No.  Never. (Tr. 1137)
> Q.  (By Mr. Moylan-Cross) And you've never told anyone else that you wanted $10,000 a month – you need $10,000 a month to live on?
> A.  That was not what I said.  No.
> Q.  You never told anybody that?
> May I please have Exhibit – Respondent's (sic) 58 called up please?
> Now, Ms. Lowry, this was a memo that Mr. DeRose prepared for you dated April 9, 2004…. Go to the next page, please, Retirement Planning, the first bullet, please highlight it.  You want to be financially independent with annual income of $120,000,…. If there are 12 months in the year, $10,000 a month would equal $120,000; correct?
> A.  Correct.
>    (ROA 422, B07407, TR 1141-1142.)

In addition, DOE stipulated that AL's objectives were to generate income while not allowing her P&G stock to be called away.  (ROA 417, B06145; ROA 772, B012567, JX 232; ROA 772, B012567; TR 1138.) The fact that AL's "number" is $10,000.00 per month is confirmed by the written evidence. First, the record reflects that at least $10,000 a month, or more was almost repeatedly taken out of the account by AL via check or wire transfer.  (ROA 371, B05767; ROA 421, B06971, TR 735; RX. 41 B; ROA 499, B08879.)  Second, as will be discussed in more detail below, AL

---

and other written evidence. It serves to put the case in the context of what Birkelbach knew and what he did about it. See, discussion, *infra*.

reiterated the same monthly financial need on an annualized basis to Ms. Karen DeRose, a Certified Financial Planner. (ROA 388, B05877, RX 58; ROA, 516, B0898, RX 58)

AL's requirement that her P&G stock not be called away would also generate significant option trading activity as the price of the underlying P&G stock approached the strike price of the call option. (ROA 526, B09017, RX 68, pp 3-5; and ROA 527, B09047, RX 69, Id.; ROA 528, B09059. RX 70, p. 6; ROA 529, B09077, RX71, Id.) When that occurred, and it was frequent, the covered call would have to be bought back at a higher price and a new covered call written out-of-the money to generate the income AL required. (Id.) (Note, when this occurred it was because the price of P&G common stock was rising, which redounded to AL's benefit). (ROA 421, B06971, TR 873-881, 890.)

In addition to conventional supervisory procedures, it must be noted that AL's monthly statements were originally sent to her father's CPA in Florida. (ROA 560, B09465 JX 20, et. seq.; ROA560, et. seq. B09465, et.seq.) Later, the monthly statements were sent to AL's own CPA's, Pesevanto & Pesevanto. (ROA 600, et.seq. B09899, et. seq. JX60, et.seq.; ROA 421, B06971, TR 798.)

Birkelbach's supervision of AL's account also included bringing in yet another set of eyes to monitor the activity in AL's account, Karen DeRose, a certified financial planner and Series 7 Registered Representative. (ROA 422, B07407, TR. 1105-1107.) While Ms. DeRose is not an options expert, she did not have to be. (ROA 818, B013535, NAC at, 38.) Ms. DeRose was not brought in to critique or modify Murphy's options strategies for AL's account. Ms. DeRose was brought in to look

over Birkelbach's shoulder in monitoring AL's account. (ROA 422, B07407, TR. 1105-1107.)

Birkelbach testified that he was aware Murphy was talking to AL practically daily. (ROA 422, B07407, TR. 1103; ROA 789, B012905; HP Decision, at 37-38, ROA 818, B013535 NAC, at 37.)

Moreover, Birkelbach was not the only person with "hands on" at BIS. The Firm's Compliance Officer, George Langlois was involved with the activity in AL's account daily. (ROA 422, B07487, TR. 1100-1103; TOA 421, B06971, TR 746-750.) Langlois reviewed the trade blotter daily, including order tickets. (Id.; ROA 818, B0013535 NAC, at 39.) Langlois had frequent, i.e., almost daily discussions with Murphy about AL's account as well as frequent, i.e. several times a week, discussions with Birkelbach. (ROA 421, B06971, TR 746-750; ROA 422 B07407, TR . 1100-1103.)

Langlois discussed sending out Activity Letters with Birkelbach. (ROA 421, B 06971, TR. 750-755; ROA 178, B03035; ROA 178-185, B03035-B03049; H.P. Decision, at 38; ROA 818, B013531, NAC, at 36; ROA 370, B05759; ROA 178-185, B03035-B03049.) Birkelbach did not stand in Langlois' way. (ROA 422, B07407 ,TR 1103) Langlois sent out 8 Activity Letters, one noting over $250,000 in commissions charged to the account. (ROA 370, B05759, TX40; ROA 498, B08871; ROA178-185 JX80-87, B03035-B03049; ROA789, B012905 H.P. Decision, at 38; ROA 818, B013155 NAC, at 35-36.) Each letter also noted the "high level of activity" or "active trading." (Id. ROA 178-185, B03035-B03049, JX80-87.) The

record reflects the letters were signed and returned with no further response from AL.  (ROA 421, B006971, TR. 755.)

In addition to the duplicate Monthly Statements sent to AL's CPAs and financial adviser, AL also personally received every confirmation and monthly statement.  (ROA 116-ROA 167, B02431-B02977; ROA 419, B 06165, TR 173.) These documents are required by law to be provided to customers after every trade and after the end of each month.  (<u>See</u>, Section 17 of the Exchange Act the rules and regulations promulgated thereunder, <u>viz</u>. Rules 17a-3(8) and 17a-3 (17), [17 CFR 24017a-3(8) and 240.17a-3(17)] These documents are the first line of defense for any customer of any brokerage firm.  AL never raised a concern.  (ROA 421, B06971, TR 755.)

The NAC opined that what Birkelbach did, as set forth above, was not adequate.  (ROA 818, B01353, NAC at, 50.) The Hearing Panel expressly stated that the sanction of a $25,000 fine, 6 months suspension as a General Securities and Options Principal, as well as re-qualification in those capacities did not impact Birkelbach's other principal designations, Municipals and Financial and Operations, let alone his General Securities Representative registration.  (ROA 178, B012965, H.P. Decision, at 51, fn. 83.)  Nonetheless, after almost 40 years in the business, NAC increased the sanctions imposed by the Hearing Panel on Birkelbach to a permanent bar in all capacities. (ROA 818, B013535, NAC Decision at, 50.)

**<u>Customer BM</u>**

BM's account was open for 3 months, April – June 2007. In the first month, Murphy realigned BM's portfolio selling many "penny stocks" for more substantial, albeit still low priced, securities. (ROA 818, B013535, NAC, at 10.)

Whether this re-alignment was authorized is subject to dispute. (ROA 818, B013535, NAC, at 11.) Yet, even BM conceded there could have been a miscommunication between him and Murphy as the account was transferred to Murphy. (ROA 419, B06165, TR.75-78.)

BM disputed trades in May, 2007, the following month. (ROA 818, B01353, NAC, at 11.) Birkelbach was brought in and the matter was discussed among Murphy, BM and others inside and outside BIS. Shortly thereafter, in June, 2007, BM's account was closed. BM later complained to the Illinois Securities Department and FINRA. Thereafter, the matter was resolved to BM's satisfaction with the execution of a Mutual General Release and Settlement Agreement in January, 2008. (ROA 536, B09111, RX 78; ROA 536, B09111.)

## V. SUMMARY OF ARGUMENT

In terms of its disciplinary powers, a SRO established and organized under the Federal Securities Laws, such as FINRA, is no different from the SEC. Federal court precedent has established unequivocally that the SEC is subject to the limitations for civil penalties contained in 28 USC §2462, meaning that the SEC would be required to bring disciplinary action for failure to supervise a registered representative within 5 years of the date of the alleged misconduct if they were seeking a "civil penalty." Yet, while the SEC would be barred from seeking a civil

penalty after the lapse of 5 years, FINRA an organization "registered with" and "overseen by" the SEC would not be so barred, based on the SEC's interpretation of 28 USC §2462. (App. at p.1, ftn. 1)[3] The interpretation runs afoul of the most basic judicial principles of due process and fundamental fairness that are intended to be protected through the use of limitations periods.

Similarly amiss of those principles was the SEC's determination that the increase in penalty from a 6-month suspension and a fine to a lifetime bar in all capacities for Birkelbach would be sustained. This action by FINRA's NAC is unprecedented and unwarranted in light of the single charge against Birkelbach for failure to supervise and the evidence of his affirmative efforts made to ensure supervision on several fronts.

## VI. ARGUMENT

### A. Standard of Review

Upon a petition for review of SEC findings, the Court shall give deference to the factual findings of the SEC provided those findings are supported by substantial evidence. Substantial evidence is that evidence which a reasonable person would find adequate to support the conclusion. *Monetta Financial Services, Inc. v. SEC*, 390 F.3d 952, 955 (7th Cir. 2004).

**B. The SEC improperly concluded that self-regulatory organizations should not be required to comply with the limitations period of 28 USC §2462, to which the SEC is subject, where self-regulatory organizations are formed and governed by the same laws governing the SEC and possess identical disciplinary powers.**

---

[3] App. references refer to the Petitioner's Short Appendix.

The SEC has made prior proclamations that certain court rulings made in connection with private securities law cases do not apply to it. For example, after *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976), the SEC declared that it did not have to prove *scienter* in its SEC Rule 10b-5 actions, because it is a government agency and it was acting in the public interest and for the protection of investors. The United States Supreme Court disagreed in *Aaron v. SEC*, 446 U.S. 680 (1980), holding that the statutory language applies to all civil litigants, including the SEC. Therefore, the SEC must allege and prove that the defendant or respondent acted with *scienter* before it can prevail on an SEC Rule 10b-5 claim.

In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11 (1979), the United States Supreme Court rejected the SEC's *amicus* argument that it should imply a private right of action for alleged violations of Section 206 of the Investment Advisor's Act of 1940, the general anti-fraud provision. [15 USC §80b-6.]

In *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551 (1979), the United States Supreme Court also rejected the SEC's argument as *amicus* that a non-contributory, compulsory pension plan should be considered a "security" within the meaning of the Securities Act of 1933 [15 USC 77a, et. seq.] and the Exchange Act. [15 USC §78a, et. seq.]

The United States Supreme Court took the SEC to task in *SEC v. Sloan,* 436 U.S. 103 (1978) for suspending the trading in Canadian Javelin stock for successive 10 day periods, when the statute was clear that the SEC only had statutory

authority to impose one 10 day trading suspension. (Section 12(k) of the Exchange Act, [15 USC §78l(k)])

While the general rule is that the courts should give deference to an agency's interpretation of its governing statute(s), there are occasions, as here, where the courts need to reign-in an agency's aggressive interpretation of the laws that govern it. *See generally, Matz v. Household International Tax Reduction Investment Plan*, 265 F.3d 572 (7th Cir. 2001).

In this same vein, prior to *Johnson v. SEC*, 87 F.3d 484 (U.S. App. D.C. 1996), the SEC's position was that it was not bound by the limitations period contained in 28 U.S.C. §2462. This statute requires a government entity to bring an action seeking civil penalties within five years of the date of the occurrence. The *Johnson* court dictated otherwise applying the 5-year limitations period in §2462 to the SEC.

Nonetheless, the SEC has steadfastly maintained the position that a SRO such as FINRA is not bound by 28 U.S.C. §2462 because it is independent of the SEC. Petitioner submits that there is no logical or legitimate distinction between the SRO and the SEC that supports the SEC's conclusion. This is particularly compelling because the result the SEC advocates results in the complete abolition of a limitations period for all SRO disciplinary actions.

Fundamental fairness and due process considerations require a different result. Where an SRO has the power to inflict the same degree of discipline as the SEC, they too should be subject to a limitations period, a principle that provides:

"security and stability to human affairs," and one which is: "vital to the welfare of society." *Gabelli v. SEC*, 568 U.S. ___, (2013), slip opn. at 8, *citing*, *Wood v. Carpenter*, 101 U.S. 135, 139 (1879) and *Wilson v. Garcia*, 471 U.S. 261, 271 (1985). (App. at p.43.)

For the same reasons 28 U.S.C. §2462 applies to disciplinary actions against a broker-dealer by the SEC, it should apply to disciplinary proceedings brought by an SRO, which is subject to SEC regulation, performs identical functions, and possesses identical disciplinary powers.

### i. The Administrative Limitations Period Applies to SEC Proceedings Which Seek a Civil Penalty

28 U.S.C. §2462 was held to bind the SEC in *Johnson v. SEC*, 87 F.3d 484 (U.S. App. D.C. 1996). In *Johnson*, the court applied the limitations period set forth in 28 U.S.C. §2462 and vacated the SEC sanctions, which included Johnson's suspension as a branch office manager. *Id.*, at 492. The court found that the sanction amounted to a penalty, i.e. a form of punishment that goes beyond compensating or otherwise remedying the individual who sustained losses. If the sanction amounts to a penalty, the limitations period applies. The SEC is required to bring the disciplinary action within 5 years of the date the acts constituting the violation take place. *Id.*, at 487-88.

The SEC is bound by §2462 because of the types of penalties that can be imposed following disciplinary proceedings and the ramifications those penalties have on the individual sanctioned. *Id.*, at 488-89. The SEC has the power to strip an individual of his/her ability to earn a living, with consequences lasting well

beyond the time of suspension because the disciplinary history is a part of the individual's permanent record, ("CRD"). The consequences of disciplinary actions are far-reaching, due in part to Congress' mandate that the SEC and SRO's such as FINRA, make the disciplinary records of broker-dealers available to the public. *Id.*

The court focused also on the nature of the allegations against Johnson in determining that §2462 applied. *Id.*, at 489. Specifically, the court noted that the SEC's allegations centered on the individual's prior conduct, not on her current ability to supervise or current performance. *Id.* Because the allegations involving Johnson's supervision concerned themselves with past events, specifically events that had transpired more than 5 years before the SEC's administrative complaint was filed, the court found the relief sought to address the past conduct was penal in nature. *Id.*

The bulk of the allegations against Birkelbach for inadequate supervision of Murphy are based on events that began at least 6 years before the DOE filed its Complaint. (Tr. 110, 249-50.) DOE's Expert, Mark Allaire, testified and stated in his Expert Report that the covered call option strategy employed in the account of AL was unsuitable from the onset – October, 2001, and clearly carried over to July, 2002 when Murphy received AL's account. (ROA 421, B06971; ROA 51 and ROA 53, p. 6; TR 605.)

The DOE Complaint is dated July 30, 2008, almost 7 years from the time FINRA's expert testified this cause of action accrued and 6 years from the time of Murphy's involvement with AL's account. (ROA1, B00001) Birkelbach was not

alleged to have engaged in any wrongful acts in any capacity other than his supervisory function. As in *Johnson*, the allegations in the DOE Complaint centered on past events and not Birkelbach's current ability to supervise or current performance.

On appeal, the NAC increased Birkelbach's sanction from a fine, suspension and re-qualification, to a complete bar in all capacities. The SEC affirmed the bar, which is without doubt penal in nature. Where a sanction operates to prevent an individual from pursuing his established career, it is a penalty. *See*, *SEC v. Jones*, 476 F. Supp. 2d 374, 385 (S.D.N.Y., 2007). Because the sanction imposed on Birkelbach is penal in nature, §2462 should have been applied to bar DOE's Complaint.

### ii. The Exchange Act Establishes the Link Between the SEC and SROs.

There is no distinction between the authority of the SEC and a SRO to file administrative complaints and impose sanctions for violations. If the SEC is bound by §2462 for the reasons set forth in *Johnson*, so too should the SROs because they perform the same function as the SEC in terms of disciplinary proceedings against its members. Pursuant to Sections 6(b)(1) and (b)(6) and 15A of the Exchange Act, [15 U.S.C. §78f (b)(1) and (b)(6) § 78o-3], National Securities Exchanges and Registered Securities Associations, collectively, "SRO's" are required to enact and enforce compliance with SRO rules and the Exchange Act. The SRO's are empowered to discipline their members and associated persons of their members, by

expulsion, suspension, limitation of activities, fine, censure or "any other fitting sanction."

SRO's are also required by statute to uphold SEC rules and regulations. *Austin Municipal Securities, Inc. v. NASD*, 757 F.2d 676, 692 (5th Cir. 1985). SRO's act pursuant to authority granted by federal statute and in accordance with the same statutes that bind the SEC. When acting pursuant to such delegated statutory authority, SROs carry out the work that would otherwise be done by the SEC. *D'Alessio v. NYSE*, 258 F.3d 93, 98 (2d Cir. 2001).

### iii. SROs Act as Surrogates of the SEC in the Enforcement of Securities Laws and Regulations through Disciplinary Proceedings.

The SEC and SRO's perform investigatory, prosecutorial and quasi-judicial functions. *Stephen J. Gluckman*, 54 SEC 175, 189 (1999); D'Alessio, 258 F.3d, at 95. When acting in this quasi-judicial capacity, the SRO disciplinary officers are serving as "surrogates" for the SEC. *Austin Municipal*, 757 F.2d at 690-91. As with the SEC, SRO representatives enjoy immunity from suits that arise from the performance of their investigative and adjudicatory functions. *D'Alessio*, 258 F.3d, at 95. This governmental immunity is not absolute, but applies when the SRO is acting pursuant to powers delegated to it by the Exchange Act, such as the power to discipline members for violations of securities laws, rules and regulations. *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1214 (9th Cir. 1998).

While it is argued that SRO's should not be subject to §2462 because they are not a government entity and their disciplinary authority is not controlled by a

government entity, (*see eg.*, *Larry Ira Klein*, 52 SEC 1030 (1996)), the reality is that they are intrinsically tied to the SEC. As shown above, they possess the same disciplinary powers as the SEC, are required to uphold the same laws in the same manner as the SEC, enjoy personal immunity and anti-trust immunity. *See*, *Gordon v. New York Stock Exchange, Inc.,* 422 U.S. 659, 689, 95 S. Ct. 2598 (1975). The disciplinary proceedings must be conducted in accordance with SEC rules and the results reported to the SEC. If the SRO fails to act as the SEC's surrogate, it is subject to discipline by the SEC. *D'Alessio*, 258 F.3d, at 96. In addition, the individual members are subject to reporting requirements on their Form U-4, which further enables the SEC to monitor and ensure appropriate actions are taken by the SRO. *See eg.*, FINRA Rule 4530.

Such power commands that the SROs be subjected to the same limitations period as the SEC. Statutes of Limitations, ("S/O/L") are "indispensable" to the fair administration of justice and practical application of law and government policy. While the right to prosecute is undeniable, the interests of justice dictate that right is overridden with the passage of time. *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 301, 67 S.Ct. 271 (1946).[4]

28 U.S.C. §2462 provides an ideal limitation that would bring continuity and predictability to SRO proceedings. Such continuity and predictability comports with considerations of fairness that are wholly appropriate in light of the disciplinary powers given to the SRO's. If the SRO is not subject to §2462, but the

_____

[4] While not considered a statute of limitations, FINRA has acknowledged the necessity of limitations principles in its Arbitration Code and imposes a 6-year eligibility requirement on claims of customers and industry professionals. *See*, FINRA Code of Arbitration Procedure, Rules 12206, 13206.

SEC is, it provides an obvious backdoor for the SEC to pursue stale claims, via a SRO, for violations of the Exchange Act. Such a conclusion is illogical and contrary to the purpose, intent, and spirit of the laws of limitations.

*D'Alessio* provides an illustrative factual backdrop for how these organizations are meshed. The investigation into D'Alessio's activities began with the SEC and U.S. Attorney's Office, not the NYSE. 258 F.3d, at 96-97. Following indictment, the NYSE brought parallel disciplinary proceedings against D'Alessio, under the Exchange Act. It is easy to see that if the SEC discovered the activities after the limitations period in 28 U.S.C. §2462, the SRO could still proceed with identical disciplinary proceedings and identical sanctions which the SEC would have been barred from imposing. This result makes it clear that unless the limitations period is equally applied to the SEC and SROs, it is rendered meaningless.

While the SEC continues to assert that it is distinguishable from a SRO, it is a distinction without a difference. The SEC cannot deny that SRO's are created by federal statute and governed by the rules of the SEC. The SEC cannot deny that a SRO possesses disciplinary powers equal to it. The SEC acknowledges that a SRO enjoys governmental immunity. (App. at Opn. 33, ftn. 127, citing *D'Alessio*)

A SRO is not distinguishable from the SEC in any meaningful way that should allow it to escape the mandates of the statutory limitations that apply to the SEC.

In *Gabelli v. SEC*, 568 U.S. ___, (2013), the United States Supreme Court determined that the "discovery rule" which acts to toll the running of a limitations period does not apply in actions by the SEC for civil penalties. To illustrate its reasoning, the United States Supreme Court noted that the SEC is distinguishable from an individual who receives the benefit of the discovery rule because of the SEC's vast tools of investigation and enforcement, which are not available to the ordinary individual. *Gabelli*, slip opn. at 10-11 (App., at P.48.) Because the individual does not have the investigative and authoritative tools, he or she most likely will not learn of wrongdoing until there is some evidence of injury. Accordingly, the discovery rule rightly applies. *Id.* This distinction between the individual and the SEC is clear and highlights the lack of any difference between the SEC and a SRO that would warrant a limitations period for one but not the other.

The same tools of investigation and enforcement available to the SEC are available to a SRO, having been granted to the SEC by Congressional legislation. The United States Supreme Court has stated that those tools give the SEC an advantage over the ordinary person to detect wrongdoing and pursue disciplinary action and penalties, thereby nullifying the need for a discovery rule and requiring a limitations period to prevent overreaching of authority. Yet the SRO, possessing the same tools of investigation and enforcement and the same powers to discipline and penalize is not subject to any limitations period.  SRO's possess vast authoritative powers but are not subject to any limitations period to prevent

overreaching of authority and presentation of stale claims. When a SRO acts with this identical authority and power, it is nonsensical to state they are distinguishable from the SEC. If the purposes of limitations periods are to be recognized and their existence to retain importance, the practical effects of the failure to effectuate them needs to be honored in this instance. As stated by Chief Justice Marshall, allowing a penalty to be imposed without a time limitation: "would be utterly repugnant to the genius of our laws." *Gabelli*, slip opn. at 12 (App., at P49)(internal citations omitted).

**B.    The Sanction Increase from a Suspension to a Bar in All Capacities is Not Appropriately Targeted to the Misconduct For Which Birkelbach was Charged.**

Disciplinary sanctions are remedial in nature and serve to deter future violations and improve overall business practices.  *See*, FINRA Sanction Guidelines, #1; *Department of Enforcement v. Merrimac Corporate Securities, Inc.*, Disc. Proc. No. 2007007151101, at *33 (FINRA December 8, 2010).   The permanent bar of Birkelbach from the securities industry is a penalty. Such penalty should comport with the Guidelines. Any disciplinary sanction should bear some relationship to the conduct it is intended to deter and the business practices it is intended to improve. Where a sanction is not appropriately targeted to address the conduct found to violate the securities rules or laws at issue, a modification of the sanction is appropriate.  *See*, *Department of Enforcement v. Pellegrino*, Disc. Proc. No. C3B20050012, at *2 (FINRA NAC January 4, 2008).

In *Pellegrino*, the principal was charged in connection with his failure to supervise a group of registered representatives over an approximate 18-month period. He was charged with failure to maintain adequate supervisory procedures and also for his failure to heed various "red flag" warnings regarding the activities of the registered representatives. *Id.*, at *2, 8. The NAC affirmed the hearing panel's findings regarding the violations, but modified the sanction from a suspension in all capacities to a bar in a principal capacity only. *Id.*, at **16, 19, 22. The NAC found that the suspension in all capacities was not sufficiently tied to the offense because it was not related in any way to his failure to supervise. *Id.*, at *2. The modified sanction was more appropriately formulated to address the violative conduct because it prevented the Principal from acting in a supervisory capacity, the capacity in which he was performing when the acts at issue occurred.

Similarly, in *Department of Enforcement v. Midas Securities, LLC, et al.*, Disc. Proc. No. 2005000075703 (FINRA NAC March 3, 2011), three principals were charged with failure to supervise registered representatives in the sale of unregistered securities and maintain adequate supervisory procedures. *Id.*, at *3. Although the violations were found to be egregious, meriting serious sanctions and the Principals were found in some instances to have done absolutely nothing to supervise the registered representatives, the Principals were not barred in all capacities. Id., at *16, 18. Rather, they were suspended in their Principal capacities for their failures to supervise. Id., at 18.

A sanction in a Principal capacity is the appropriate sanction to address a failure to supervise because it prevents that person from acting as a supervisor. Birkelbach was charged in particular capacities as a General Securities Principal and Options Principal for his failure to supervise the activities of BIS's former Registered Representative, Murphy, in terms of sales practices and options trading. The Hearing Panel denied DOE's Sixth Claim for Relief which alleged Failure to Establish and Maintain an Adequate Supervisory System and Written Supervisory Procedures - Violation of NASD Conduct Rules 2860(b), 3010 and 2110. Thus, the Hearing Panel recognized that Birkelbach had in place proper supervisory procedures, but found Birkelbach wanting with respect to his supervision of Murphy in relation to just two customer accounts.

Moreover, no charges were brought against Birkelbach for any acts he performed as a Registered Representative, ("RR") or in any of his other Principal capacities. Tellingly, the Hearing Panel specifically noted that Birkelbach was suspended only as a General Securities Principal and Options Principal, but not in any capacity related to Municipal Securities or Financial and Operations Principal because his supervisory violations were not related to those areas. (ROA 789, B01295, HP Decision, at 51, fn. 83.) Moreover, there was never a whisper in any aspect of the proceeding that Birkelbach's conduct as a RR was ever an issue in the case.

Similarly, in all of the cases cited by the NAC in support of its findings related to supervision that were sustained by the SEC, not a single respondent was

permanently barred in all capacities based on findings of supervisory violations alone. (NAC Decision, pp. 34-40; *Pellegrino*, *infra.* (sanction modified to apply to supervisory capacity only); *Paul C. Kettler*, 51 SEC 30 (1992)(censure and fine); *DOE v. VMR Capital Markets*, NASD Complaint No. C02020055 (NAC December 2, 2004)(15-day suspension in supervisory capacity); *Robert J. Prager*, Exchange Act Release No. 51974 (SEC July 6, 2005)(2-year suspension with requalification on examination, considering 4 prior violations); *Albert v. O'Neal*, 51 SEC 1128 (1994)(1-year bar with right to reapply in non-proprietary and non-supervisory capacity); *Michael H. Hume*, 52 SEC 243 (1995)(censure, fine and requalification by examination before accepting any supervisory position); *Quest Capital Strategies, Inc.*, 55 SEC 362 (2001)(1-year bar in supervisory capacity with right to reapply); *Richard F. Kresge*, 2008 FINRA Disip. LEXIS 46 (October 9, 2008)(barred in all capacities on remand from SEC based on charges of reporting and registration violations, in addition to failure to supervise); *Bradford John Titus*, 52 SEC 1154 (1996)(10-day suspension in all capacities).)

Because the charges were limited to Birkelbach's general supervisory responsibilities, the hearing testimony and evidence presented focused on Birkelbach's supervisory performance over Murphy generally and his options activities. Because the charges were limited to supervisory issues, Birkelbach concentrated his defense on his supervisory performance. He was never given notice either at the Hearing or on appeal that his registration as a RR or his registrations in other Principal capacities were in jeopardy. Accordingly, neither

DOE nor Birkelbach ever presented evidence related to Birkelbach's performance as a RR, or as a Municipal Securities and Financial and Operations Principal, the latter of which being expressly recognized by the H.P., that heard the case. (ROA 789, B01295, HP Decision at 51, fn. 83.) Now, on appeal, Birkelbach is forced to address a bar in all capacities.

It needs to be recognized also that the NAC Decision is not a dispassionate, objective review of the record. Rather, it reads as an adversarial document, containing many assumptions and resolving all ambiguities in favor of the DOE. For example, the NAC failed to apply any standard of reasonableness to Birkelbach's supervisory methods. Birkelbach had a duty to reasonably supervise Murphy's handling of customer accounts, and the reasonableness of the techniques can only be addressed by considering the goals of the customer and what methods would be suitable for meeting those objectives. *See generally*, *Hotmar v. Lowell H. Listrom & Co.*, 808 F.2d 1384, 1387 (10th Cir. 1987).

As shown above, the evidence clearly established that AL's objectives were to generate $10,000 per month, while preserving her P&G stock. The NAC determined that Murphy's testimony that AL wanted to generate $10,000 from her account "not credible". (ROA818, B01353, NAC, at 34-35 fn. 66.) The NAC then went on to state: "…the Hearing Panel <u>implied</u> that it did not find Birkelbach credible and made no finding: "…that AL sought $10,000 monthly". (<u>Id</u>.; *Emphasis added*) The NAC, and SEC in sustaining the findings, ignored AL's pressure on

Murphy to generate $10,000.00 per month as well. (ROA 422, B07407, TR 1141-1142.)

But this fact, established by the impeachment of AL and buttressed by the schedule of monthly withdrawals by AL from her account ($10,000.00 and more), and the DeRose memo, ($120,000 *per annum*) and ignored by the Hearing Panel, NAC, and SEC is critical. (ROA 371, B05767, RX41; ROA 388, B05877, RX58.) It serves to put the case in the context of what Birkelbach knew and what he did about it. The trading activity in AL's account was not the "red flag" ignored by Birkelbach as the NAC concluded, when considered in light of AL's objectives. (ROA 818, B01353, NAC at 35.) To the contrary, the increased trading was consistent with AL's objectives and when taken in conjunction with the information Birkelbach received through other supervisory methods, such as his knowledge that AL, her CPA's, Pesevanto & Pesevento, and her Series 7 Financial Planner, Karen DeRose all of whom received monthly account statements, then Activity Letters sent to AL and Birkelbach's knowledge that Murphy was in almost daily contact with AL, establish that a reasonable system of supervision was used.

While the NAC was naturally entitled to adopt the Hearing Panel's factual conclusions, the NAC should not be permitted to use the fact that Birkelbach chose to appeal the decision to impose an unwarranted, Draconian and apparently unprecedented increase in sanctions for a single "failure to supervise" charge regarding two of Murphy's accounts. (ROA 818, B01353, NAC, at 48 – NAC adversarily characterizes Birkelbach's challenge to the Hearing Panel's factual

conclusions regarding his additional supervisory measures on appeal as a failure to accept responsibility, thus justifying the increased sanction imposed.)

## VII.   CONCLUSION

For the foregoing reasons, Carl M. Birkelbach respectfully requests that this Honorable Court enter an Order dismissing the case through the application of the five-year S/O/L provision in 28 U.S.C. 2462 to FINRA. Alternatively, that the SEC's affirmance of the Hearing Panel's penalties be reversed and penalties reduced in terms of Birkelbach's industry bar in all capacities, to "time served" and for such other and further relief that the Court finds consistent with the public interest and the protection of investors.

Respectfully submitted,
CARL M. BIRKELBACH

/s/ James J. Moylan
James J. Moylan, One of his Attorneys

**OF COUNSEL:**
JAMES J. MOYLAN AND ASSOCIATES, P.C.
Post Office Box 775965
Tree Haus 31685 Inca Way
Steamboat Springs, CO.  80477-5965
(970) 870-0730 / (970) 870-0736 FAX

James A. McGurk
Law Offices of James A. McGurk, P.C.
10 S. LaSalle, Ste. 3300
Chicago, IL  60603-1026
(312) 236-8900

## PROOF OF SERVICE

  The undersigned counsel for Petitioner hereby certifies that on
January 7, 2014, two copies of the Brief and Required Short Appendix of
Appellants, as well as a digital version containing the brief were delivered to
counsel of record for the Respondent, U.S. Securities and Exchange Commission:

Nicholas J. Bronni, Esq.
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549

      /s/ James A. McGurk
      James A. McGurk, Attorney for Petitioner

**OF COUNSEL:**
JAMES J. MOYLAN AND ASSOCIATES, P.C.
Post Office Box 775965
Tree Haus
31685 Inca Way
Steamboat Springs, CO.  80477-5965
(970) 870-0730 / (970) 870-0736 FAX

James A. McGurk
Law Offices of James A. McGurk, P.C.
10 S. LaSalle, Ste. 3300
Chicago, IL  60603-1026
(312) 236-8900

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| CARL M. BIRKELBACH, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) |
| | ) |
| UNITED STATES SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| | ) |

**Appeal From the Opinion of the**
**Securities and Exchange Commission**
**Admin. Proceeding File No. 3-14609**

**REQUIRED SHORT APPENDIX OF PETITIONER**

JAMES J. MOYLAN AND ASSOCIATES, P.C.
James J. Moylan
Attorney for Petitioner

Post Office Box 775965
Tree Haus
31685 Inca Way
Steamboat Springs, CO. 80477-5965
(970) 870-0730 / (970) 870-0736 FAX

James A. McGurk
Law Offices of James A. McGurk, P.C.
10 S. LaSalle, Ste. 3300
Chicago, IL. 60603-1026
(312) 236-8900

# TABLE OF CONTENTS

Circuit Rule 30(d) Statement ................................................... 30

Circuit Rule 32(a)(7)(B) Statement....................................... 30

Opinion of the United States Securities and Exchange Commission
      – July 2, 2013 ........................................................... P. 1

Order of United States Securities and Exchange Commission
      Sustaining FINRA Disciplinary Action ......................................... P. 42

*Gabelli v. United States*, Supreme Court of the United States
      Slip Opinion ................................................................ P. 43

FINRA Rule 9348
      Powers of the National Adjudicatory Council on Review .................. P. 52

## CIRCUIT RULE 30(d) STATEMENT

All materials required by parts (a) and (b) of Circuit Rule 30 have been included in the Petitioner's Appendix.

/s/ James J. Moylan
James J. Moylan,
Attorney for Petitioner

January 7, 2014
Dated

## CIRCUIT RULE 32(a)(7)(B) STATEMENT

Counsel for Petitioner certifies that the Petitioner's Brief contains 7,494 words as counted by the word processing program.

/s/ James J. Moylan
James J. Moylan,
Attorney for Petitioner

January 7, 2014